**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **DETRICH BATTLE,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:20-cv-63 (MTT)** |
| **HANCOCK STATE PRISON,** | ) | |
| **Defendant.** | ) | |

**ORDER**

The Defendants move to dismiss pro se Plaintiff Detrich Battle's complaint. Docs. 21; 32. For the following reasons, Defendant Pearson's motion (Doc. 32) is **GRANTED**, and the other Defendants' motion to dismiss (Doc. 21) is **GRANTED in part** and **DENIED in part**. It is **GRANTED** as to the ADA claims against the individual Defendants in their official capacities and the claims under Title I of the ADA, but **DENIED** as to the retaliation claim against GDC.

**I. STANDARD**

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing Fed. R. Civ.

P. 12(b)(6)). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted). However, when a plaintiff is proceeding pro se, his pleadings may be held to a less stringent standard than pleadings drafted by attorneys and will be liberally construed. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

## II. DISCUSSION

### A. Facts

Battle's amended complaint is muddled, but the Court tries to piece it together and construes it liberally. It also construes the original complaint (Doc. 1) and miscellaneous attachments (Doc. 1-1) together with the amended complaint.

It appears that Battle used to be employed by the Georgia Department of Corrections. Battle alleges that on December 1, 2014, he was summoned to a meeting with Deputy Warden of Security Ivory, Captain Ingram, and Lieutenant Clark. Doc. 5 at 9. He claims it was a "harassment meeting on the issue of them taking my money, because of an incident that occurred on November 7, 2014." *Id*. He alleges he experienced chest pain during the meeting and asked them to call an ambulance or his wife, but they refused. *Id*. He requested medical leave for December 15, 2014 through December 17, 2014, but "Lt. Clark, Captain Ingram and Deputy Warden of Security Officer Ivory denied this[.]" *Id*. at 10. During the week of December 15, he "called EEOC to complain about harassment and abusive treatment on the job because of my disability (medical)." *Id*.

On April 15, 2015, Battle alleges, he fell and injured himself at work. He alleges he was supposed to be paid worker's compensation, but the Defendants mishandled paperwork related to worker's compensation and threatened to terminate him. *Id*. at 10-11. On April 20, 2015, he returned to work with permanent restrictions set by his doctor. *Id*. He also returned to work on July 13, 2015 (the complaint is unclear about what happened between April 20 and July 13), and he attended a morning briefing, but he did not receive an assignment. Instead, he was sent home. *Id*. He called "personnel" but was told he had too many restrictions to work. *Id*. He claims that Clark, Ingram, Ivory, and Warden Sellers "continuously harassed and treated me indifferently [sic] from the other officers working in the booth . . . They failed to adequately place me and made my medical condition worse by unfair practices and treatment, when they removed my

inmates and made me perform manual labor, and this was after my injury sustained on the job." *Id*.

In September 2015, he was diagnosed with postural orthostatic tachycardia syndrome (POTS). He also claims that at some point (it is unclear when), he was diagnosed with a partial torn rotator cuff, sciatica, bulging discs, and degenerative disc disease. Doc. 1 at 4. He was terminated on April 20, 2018. In his EEOC charge, he claimed his employer told him he was discharged for not providing updated medical documentation, but that (i) his doctor actually had sent the documents and (ii) the deadline for sending the documents was April 24, 2018—four days after he was discharged.

Battle's pleadings do not discuss what happened between September 2015 and April 2018. Based on a letter Battle submitted along with his complaint, it appears he had been placed on leave without pay from July 29, 2015 to April 2018. Doc. 5-1 at 43.

Battle filed suit, alleging the Defendants violated Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and retaliated against him in violation of the ADA.[1] Doc. 5 at 7-8.

[1] Although the Court's screening order made passing mention of Title II of the ADA, it is clear Battle did not bring any Title II claims. First, his original complaint specifically cited Title I and did not cite Title II. Doc. 1 at 3. Second, though his recast complaint only cites the ADA in general terms, the EEOC charge attached to that complaint was limited to Title I of the ADA. Docs. 5 at 7; 5-1 at 7. Also, the Court does not interpret the recast complaint to allege a hostile work environment claim. Although the complaint contains the words "hostile work environment," the phrase appears without elaboration in a long list of legal phrases, and he manifests no intent to seek recovery for that. Doc. 5 at 4, 6. Further, his ADA allegations mention intentional discrimination and retaliation, but not hostile work environment. *Id*. at 7. Similarly, his EEOC charge focuses on his termination, not a hostile work environment. Finally, the complaint does not allege sufficient facts to state a claim for hostile work environment, especially in light of the fact that the only specific incidents complained of occurred in 2014 and 2015, which fall outside the statute of limitations by approximately three years.

Notably, the Defendants do not move to dismiss Battle's claims for failure to plausibly allege the elements of an ADA claim.

**B. Proper Defendants**

The Court screened the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and allowed the claims against Hancock State Prison and against Defendants Clark, Ivy, Sellers, Ingram, Koon, Barnes, Davis, Watkins, Foye, Pearson, and Dixon, all in their official capacities, to proceed for further development. *See generally* Doc. 6.

In its screening Order, the Court also noted that the correct Defendant employer may be the Georgia Department of Corrections ("GDC") rather than Hancock State Prison. *Id*. at 2. The Court noted that the claims against the individuals in their official capacities might be redundant if their employer were named as the Defendant. *Id*. In their motion to dismiss, the Defendants argue that GDC, not Hancock State Prison, is the proper entity. Doc. 21-1 at 5 n.1. Battle also wrote a letter indicating he wished to amend his complaint to include GDC. Doc. 23.

As the Defendants argue, "Hancock State Prison is an institution administered by the Georgia Department of Corrections ("GDC"), and as such, it has no independent legal existence apart from the GDC." Doc. 21-1 n.1 (citing O.C.G.A. § 42-2-5(a)). Pursuant to Fed. R. Civ. P. 17(b), the "capacity to sue or be sued" is determined "by the law of the state where the court is located." Thus, Georgia law controls this issue. The Georgia Supreme Court has explained that there are only three classes of legal entities: "'(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial person as the law recognizes as being capable to sue.'" *Georgia Insurers Insolvency Pool v. Elbert Cty*., 258 Ga. 317, 318 (Ga. 1988) (quoting *Cravey v. Southeastern*

*Underwriters Ass'n*., 214 Ga. 450, 453 (1958)). Hancock State Prison falls into none of the categories.

The Court agrees that GDC, rather than Hancock State Prison, is the proper defendant. It is **ORDERED** that GDC shall be substituted for Hancock State Prison. Because all individual Defendants in their official capacities are employees of GDC, the Court finds the ADA official-capacity claims are redundant. Accordingly, those claims are **DISMISSED**.[2]

The Defendants also argue that the individual-capacity ADA claims should be dismissed. Doc. 21-1 at 4. As the Defendants recognize, the individual-capacity claims were already addressed by the screening order. Doc. 6 at 3 ("Battle's claims against the individual defendants in their individual capacities are **DISMISSED** without prejudice as frivolous."). As a result, the only remaining Defendant for the ADA claims is the GDC.

Defendant Pearson, who was served after the other Defendants, separately moved to dismiss, making many of the same arguments. Docs. 32; 32-1. For the reasons noted above, any individual ADA claims are subject to dismissal. Further, as discussed in the screening order and in more detail below, the complaint does not raise viable claims under any other law. Accordingly, Pearson's motion to dismiss (Doc. 32) is **GRANTED**.

[2] The Defendants make this argument, though the authorities they cite apply to claims against local and municipal officials, not against state officials. Doc. 21-1 at 4-5. State official claims are not always redundant, because injunctive relief may be available against state officers in their official capacities even when it is unavailable against the state entity itself. *See Ex Parte Young*, 209 U.S. 123 (1908); *see Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 n.9 (2001). However, Battle does not seek injunctive relief here. Doc. 5 at 8.

**C. The state law claims**

In its screening Order, the Court found that "Battle's ADA claims for discriminatory discharge, failure to accommodate, and retaliation against Hancock State Prison and the individual Defendants in their official capacities may proceed for further factual development." Doc. 6 at 3. Battle did not plausibly allege any state-law claims.

However, the complaint conclusorily listed, as alleged bases of federal-question jurisdiction, "Intentional infliction of emotional distress[,] Harassment[,] Wrongful termination[,] Personal injury[,] Work place disputes[,] Hostile work environment[,] Whistle blower[,] Defamation[.]" Doc. 5 at 4.[3] The Defendants addressed those claims in their motion, so in an abundance of caution, the Court addresses those claims, too.

*1. Tort claims*

First, the Defendants argue that pursuant to the Georgia Tort Claims Act, tort claims against the state cannot be brought in federal court. Doc. 21-1 at 6. Battle did not respond. Further, the Court already screened the complaint and found it did not raise any state-law claims. Battle did not move to amend, file a motion for reconsideration, or otherwise indicate disagreement with the Court's construction of his complaint. Also, Battle's response to the motion to dismiss only references his ADA claims, confirming the Court's construction of his complaint in its screening order. Accordingly, the Court finds Battle has not raised any state tort claims.

However, the Court agrees that any state tort claims against GDC would be barred by sovereign immunity. The narrow immunity waiver of the GTCA does not include claims brought in federal court. O.C.G.A. § 50-21-23(b). Similarly, Battle failed

[3] That was on a handwritten document copying a standard form complaint. Doc. 5 at 4. He also filed with the Court a form pleading listing only the ADA as the basis for his lawsuit. *Id*. at 7-13.

to comply with the ante litem notice provisions of the GTCA, O.C.G.A. § 50-21-26, so the state has not waived sovereign immunity for any tort claims. Because the GDC is an arm of the state under Georgia law and Battle has not complied with the GTCA, the claims against GDC are barred. *See McBride v. Bd. of Corr.*, 221 Ga. App. 796, 472 S.E.2d 693 (1996) (holding GDC is an "arm of the state" for purposes of sovereign immunity).

Sovereign immunity does not apply to the individual-capacity state-law claims. The relevant defense to that would be official immunity. Because the Defendants do not argue it, the Court does not address it. However, it is clear that the complaint does not plausibly allege a tort claim against any individual Defendants.

*2. Georgia Whistleblower Act claims*

The Georgia Whistleblower Act provides a cause of action in state court for employees whose public employers have retaliated against them for reporting misconduct. O.C.G.A. § 45-1-4. The elements of a claim under the Georgia Whistleblower Act are: "(1) the employer falls under the statute's definition of 'public employer'; (2) the employee disclosed 'a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency'; (3) the employee was then discharged, suspended, demoted, or suffered some other adverse employment decision by the public employer; and (4) there is some causal connection between (2) and (3)." *Hogan v. Hosp. Auth. of Valdosta & Lowndes Cty.*, 2016 WL 3248374, at *5 (M.D. Ga. June 13, 2016) (citing *Forrester v. Georgia Dept. of Human Servs.*, 308 Ga. App. 716, 722 (2011)).

The GWA claims against GDC are barred by sovereign immunity. *Brandenburg v. Bd. of Regents of Univ. Sys. of Georgia*, 518 F. App'x 628, 631 (11th Cir. 2013) ("The district court also did not err in dismissing the Georgia Whistleblower Act claim against MCG based on Eleventh Amendment immunity."); *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) (holding that GDC is entitled to Eleventh Amendment immunity). Further, Battle does not allege he reported misconduct or otherwise engaged in activity protected by the Georgia Whistleblower Act, so he clearly fails to state a claim. Likewise, as the Defendants correctly argue, there is no individual liability under the GWA. Doc. 21-1 at 12-13; *Jones v. Bd. of Regents of Univ. Sys. of Georgia*, 262 Ga. App. 75, 75, 585 S.E.2d 138, 140 (2003).

**D. The ADA claims**

On the ADA claims, the Defendants first argue that the claims are time-barred, and second, that the GDC is protected by sovereign immunity. The Court addresses each argument below.[4]

*1. Timeliness*

"Timely filing a charge of discrimination is a prerequisite to bringing suit under both Title VII and the ADA. An ADA plaintiff has the burden of proving all conditions precedent to filing suit, including the condition that he timely filed with the EEOC." *Maynard v. Pneumatic Prod. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (citations

---

[4] Notably, the Defendants do not argue that Battle failed to exhaust his administrative remedies altogether—only that his charge was untimely. If they had argued failure to exhaust, it is possible that the retaliation claim and, therefore, this entire action, would be subject to dismissal. *See* Docs. 5-1 at 7 (October 19, 2018 charge, arguably not alleging retaliation). The issue is not jurisdictional, and the Court does not reach it here. *See Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843 (2019); *Davis v. Fort Bend Cty.*, 893 F.3d 300, 307 (5th Cir. 2018) ("Failure to exhaust is an affirmative defense that should be pleaded"), *aff'd sub nom. Davis*, 139 S. Ct. 1843.

omitted). In Georgia, the EEOC charge must be filed within 180 days of the last discriminatory act. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).

The Defendants contend the ADA claims are time-barred because Battle did not file his charge with the Equal Employment Opportunity Commission until more than 180 days after the alleged discrimination occurred. Doc. 21-1 at 3. The record is clear—and the Defendants acknowledge—that Battle filed a formal, verified charge on October 19, 2018. Doc. 5-1 at 7; *see* Doc. 28 at 4. That is 182 days after his April 20, 2018 termination.

However, Battle argues that he also filed a charge before October 19. Docs. 24; 24-1. On October 16, 2018—179 days after Battle's termination—the EEOC wrote him a letter referencing prior communications, from him, alleging discrimination. Doc. 24-1. That letter notified Battle that "the document you submitted to us constitutes a charge of employment discrimination." *Id*. That provides at least some evidence that Battle filed a charge within the 180-day window.[5]

In reply, the Defendant argues that Battle has failed to show his earlier filing satisfies the necessary requirements to be a charge for statute of limitation purposes. Doc. 28 at 3-5. Specifically, the Defendant argues that "there is no evidence that Plaintiff's [pre-October 16] submission was, in fact, verified." *Id*. at 5. The Court agrees that Battle has failed to provide evidence that his earlier charge was verified.

However, EEOC regulations allow a later, verified charge to relate back to an earlier, unverified charge and cure the earlier charge's lack of verification. Specifically, the regulations provide that

[5] The fact the EEOC told him it was a validly filed charge may support an argument for tolling, too.

> a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, *including failure to verify the charge*, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge *will relate back to the date the charge was first received*.

29 C.F.R. § 1601.12(b) (emphasis added). The Supreme Court described this regulation as "an unassailable interpretation of § 706 [of the Civil Rights Act of 1964]." *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 118 (2002).

As to Battle's intake questionnaire, the author of the EEOC letter believed he had submitted sufficient information to constitute a charge. And it appears that Battle had provided sufficient information for the EEOC to fill out a form on his behalf listing both "the parties" and a general description of "the action or practices complained of." *Id*.; *see* Doc. 5-1 at 23, 7.

The Defendants' only response to this argument is that "Plaintiff's untimely verified EEOC charge may not relate back to the date the EEOC received his intake questionnaire." Doc. 28 at 5 (citing *Pijnenburg v. West Georgia Health System, Inc.,* 255 F.3d 1304, 1308 (11th Cir. 2001)). The Defendants offer no analysis of *Pijnenburg* or how it supports the Defendants' tentative assertion that the October 19 charge "*may* not relate back[.]" *Id*. (emphasis added). Does it relate back, or not? And how does *Pijnenburg* support the Defendants' argument? The Defendants' brief is silent.

The task the Defendants have set the Court—making an argument for them based on their cursory citations—is a difficult one. Perhaps the intended relevance of *Pijnenburg* is that the plaintiff's intake questionnaire in that case did not satisfy the

requirements of the statute of limitations. *Pijnenburg*, 255 F.3d at 1306. But the Court noted that "[w]e need not decide here whether a questionnaire that otherwise contains the necessary information and the requirements for a valid charge could never be considered a charge for timeliness purposes. We simply hold that *under the facts of this case*, the questionnaire filed here did not meet the requirements for a validly filed charge." *Pijnenburg*, 255 F.3d at 1307 (emphasis added). As to the issue of whether Battle's questionnaire "contains the necessary information and the requirements for a valid charge," the Defendants' brief is again silent.

The issue is complicated by different legal standards for evaluating whether a document constitutes a charge. In *Wilkerson v. Grinnell Corp.* (2001), the Eleventh Circuit adopted a manifest-intent test to determine whether a questionnaire was a charge. 270 F.3d at 1314-1321. After *Wilkerson*, the Supreme Court adopted a different test for deciding whether a document was a "charge" for purposes of the Age Discrimination in Employment Act. *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 393 (2008). Whether the *Holowecki* test (i) applies to the ADA and supersedes the *Wilkerson* test or (ii) is limited to the ADEA, appears to be an open question. *See E.E.O.C. v. Summer Classics, Inc.*, 471 F. App'x 868, 871 (11th Cir. 2012) ("Even assuming *Holowecki* is applicable to a charge under the ADA, the EEOC fails to demonstrate that Mr. Lowe's intake questionnaire is a sufficient filing."); *Fatz v. Winn-Dixie Stores, Inc.*, 2013 WL 4080330, at *8 (M.D. Fla. Aug. 13, 2013) (denying motion to dismiss because the plaintiff's intake questionnaire constituted a charge under both the *Holowecki* standard and the *Wilkerson* standard.). As to which standard governs

(*Wilkerson*, *Holowecki*, both, or something else) and how that standard applies to the facts of this case, the Defendants' brief is silent.

One potentially strong argument that could be made on the Defendants' behalf is that Battle has not filed a copy of the purported charge on the record. Is that failure to file dispositive? Or can Battle satisfy his burden by providing other evidence that a charge was filed? On those issues, too, the Defendants are silent.

Accordingly, the Defendants have not shown their motion to dismiss should be granted on timeliness grounds.

*2. State sovereign immunity*

The Defendants also argue that "The United States Supreme Court has held that Congress did not have the authority to abrogate the sovereign immunity of the states on claims arising under the provision of the ADA." Doc. 21-1 at 6 (citing *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001)). Battle did not respond to this argument.

Based on *Garrett*, the Court agrees that the employment discrimination provision of Title I of the Americans with Disabilities Act does not abrogate state sovereign immunity for damages. As noted, the GDC is an arm of the state for purposes of Eleventh Amendment immunity. Accordingly, the employment discrimination claims under Title I of the ADA for money damages are barred by sovereign immunity.

The claim for retaliation *might* be, too. That is what the Court discovered through perfunctory legal research on the issue, in the absence of authority from the Defendants. The Court could not find any controlling law, though the Ninth Circuit addressed the issue in *Demshki v. Monteith*, 255 F.3d 986, 987 (9th Cir. 2001). The

Defendants are free to make arguments for why the retaliation claim is barred. But they have not yet done so.[6]

## III. CONCLUSION

For the reasons noted, the Defendants' motion to dismiss (Doc. 21) is **GRANTED in part** as to the ADA claims against the individual Defendants in their official capacities and the ADA Title I claims, but **DENIED in part** as to the retaliation claim. Also, for the reasons noted, Defendant Pearson's motion to dismiss (Doc. 32) is **GRANTED**. The only remaining claim is against Defendant GDC for retaliation.

The Court's denial in part of GDC's motion to dismiss does not necessarily reflect the merits of the retaliation claim or of potential defenses to that claim. Rather, the Court concludes only that the claim is not subject to dismissal based on the arguments raised.

**SO ORDERED**, this 8th day of January, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

[6] To the extent sovereign immunity concerns the Court's jurisdiction, it is an issue the Court would, under most circumstances, reach *sua sponte*. But in the absence of controlling precedent, the Court will not rule on that issue unless the Defendants brief the issue and Battle has a chance to respond.